LOUIS M. SCHWARTZ V. STATE.

No. 34,194.   March 14, 1962
Motion for Rehearing Overruled May 16, 1962

*Joel W. Westbrook,* Waco, for appellant.

*R. S. (Bob) Crawford, Jr.,* District Attorney, Uvalde, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is under Art. 1544b, V.A.P.C. for the offense of embezzlement; the punishment, confinement in the penitentiary for a term of five years.

The indictment contained ten counts but only the fifth and eighth counts were submitted to the jury by the court in his charge.

By their verdict the jury found appellant guilty of the offense of embezzlement as charged in the eighth count. The eighth count of the indictment alleged:

"AND THE GRAND JURORS AFORESAID, upon their oaths, in said Court, do further present, that on or about the 6th day of April, A.D., 1960, and anterior to the presentment of this indictment, in the County of Uvalde, and State of Texas, Louis M. Schwartz was an officer for an incorporated company, to wit: L. Schwartz Company, and by virtue of his being such officer the said Louis M. Schwartz came into possession, care and control of certain mohair, to wit: 3693 pounds of mohair, of the value of $4,062.30, belonging to Clifford Gee, and which said mohair had theretofore come into the possession, care and custody of the said L. Schwartz Company, as agent for the said Clifford Gee for the following purpose, to wit: the said L. Schwartz Company was to sell said mohair for a sum of money sufficient to pay the said Clifford Gee $1.10 per pound for said mohair, to collect the proceeds for the sale of said mohair, and pay over to the said Clifford Gee the sum of $1.10 per pound for said mohair from the proceeds of said sale; and the said Louis M. Schwartz did then and there fraudulently misapply and convert to his own use the said mohair, without the consent of the said Clifford Gee, the owner thereof."

Appellant was president and one of the principal stock holders of L. Schwartz Company, a private corporation, with its principal place of business in the City of Uvalde. In addition to operating a grocery and hardware business, the company also traded in mohair and wool. As president of the corporation, appellant had control and management of the company's property and was in charge of its wool and mohair operation.

The State's evidence shows that in the spring of 1960 the company was under contract to deliver some 800,000 lbs. of mohair and had contracts to purchase only 200,000 lbs. from the growers. At such time the company was having difficulty in fulfilling the contracts and the price of mohair was higher than in the fall of 1959.

Clifford Gee, the injured party, testified that he talked to appellant around February 6, 1960, about selling his crop of mohair and told appellant that he wanted $1.11½ gross or $1.10 net, per pound, for the grown mohair. Appellant, after making a telephone call, stated that he could not get the price at that time. Gee stated that later around March 1, he again talked to appellant about selling his mohair at the same price and that appellant made a second telephone call but no deal was consummated. Gee testified that thereafter during the latter part of March appellant saw him in the lobby of the Kincaid Hotel in Uvalde and said "Well, I have finally been able to get you your price on your grown hair that I had been asking for, a dollar and eleven and a half gross" and he then asked appellant "was he sure now that it would be a dollar ten to me net" and appellant replied "Yes, it would." Gee testified that thereafter on April 6, 1960, he delivered twelve bags of grown mohair to the L. Schwartz Company warehouse and received a warehouse receipt for 3693 pounds. Gee stated that it was his understanding and testified positively that the mohair was consigned to the company to be sold at the price mentioned and that he had never received any money for the mohair.

The proof shows that on the day Gee delivered the mohair to the warehouse the entire 3693 pounds was delivered, along with other mohair, by L. Schwartz Company to Clyde Young of Lampasas in satisfaction of five separate written contracts whereby the company had contracted to deliver 160,000 of mohair to Young in the spring of 1960 at prices ranging from 86½c to 91½c per pound for the adult mohair. In the transaction Young received $34,737.85 worth of mohair and after deducting certain advances which he had made to the company and the difference

on two cars of mohair not delivered, all of which aggregated $31,812.00, Young paid to L. Schwartz Company the sum of $2925.85. On such date it was shown that adult mohair had a market price ranging from $1.01½ to $1.10 per pound.

The proof further shows that on April 6, 1960, the date Gee delivered the mohair to L. Schwartz Company, the company was in financial difficulty and was in fact insolvent and that a short time thereafter the company closed and was placed in bankruptcy. During the time of appellant's negotiations with Gee, appellant was indebted to the company.

Appellant, as a witness in his own behalf, testified that he had been president of the L. Schwartz Company since 1952 and in such capacity had over-all control and management of the company. Appellant admitted having the transaction with the prosecuting witness, Gee, relative to his sale of the mohair to the company and testified that in the transaction the company purchased the mohair from Gee at a price of $1.10 and denied that the mohair was delivered to the company upon consignment. Appellant also admitted the transaction with Young in which the 3693 pounds of mohair was delivered to Young in fulfilling the contracts.

Witnesses were called by appellant who testified that his general reputation for honesty and fair dealing was good.

We find the evidence sufficient to sustain the conviction and overrule appellant's contention that there was a fatal variance between the allegation and proof of embezzlement and that under the evidence appellant could not be guilty of embezzlement of the mohair but only guilty of embezzlement of the money derived from the sale thereof.

Under the provisions of Art. 1544b, supra, the offense of embezzlement may be committed by fraudulently converting to one's own use either *money or property*.

In 21 Texas Jur. 2nd, par. 17 at page 605 (606) it is stated:

"Whether the accused appropriated the property or the proceeds of the sale of that property seems to be largely a question of intent. Thus, it has been said that if at the time of the sale he had the intent to appropriate the proceeds, he is guilty of embezzlement of the property sold, but that if the intent to ap-

propriate the proceeds develops after the property has been sold, he is guilty of embezzlement of the proceeds of the sale."

Art. 1544b, in defining the offense, provides:

" 'Convert to his own use', as used in this Act, shall mean the application or use of such money or property in any manner or for any purpose not authorized by the owner thereof, and proof that such director, officer, agent or attorney at law or in fact, applied or used such money or property in any manner or for any purpose not authorized by the owner thereof, or that he advised, authorized, directed, aided or knowingly consented to such use or application, shall be prima facie evidence that such money or property was fraudulently misapplied and converted to the use of such director, officer, agent or attorney at law or in fact."

The State's proof shows that appellant, as an officer of the company, used the mohair in question for a purpose not authorized by Gee, the owner, in his consignment to the company and is sufficient to sustain appellant's conviction under the statute for embezzlement of the mohair as charged in the indictment.

Appellant insists that the court erred in overruling his motion to quash the indictment on the ground that there were no women on the Grand Jury which returned the indictment against him and because women had, except in the years 1955 and 1956, been systematically and deliberately excluded from Grand Jury service in Uvalde County since November 19, 1954, the effective date of the amendment of Article XVI, Section 19 of the Constitution of the State of Texas making women eligible for jury service in this State.

At the outset appellant is confronted with the holdings of this Court that one may not urge discrimination in the selection of a jury against a class of which he is not a member. In Alexander v. State, 160 Texas Cr. Rep. 460, 274 S.W. 2d 81, it was held that the accused, a white man, could not urge discrimination against Negroes in the selection of a Grand Jury and in Winfield v. State, 293 S.W. 2d 765, it was held that the accused, a male person, could not complain because no women were on the jury panel from which the jury was selected to try him.

It was shown on the hearing of appellant's motion to quash that there were no women on the Grand Jury which returned the indictment against him and, except for the years 1955 and

1956, no women had been called to serve on a Grand Jury in Uvalde County since the effective date of the Amendment of Article XVI, Section 19, supra. Jury Commissioners who had served in the county since such date testified that in the selection of Grand Juries there had been no deliberate attempt to keep women off of Grand Juries and that men were selected because they were considered better qualified.

In his brief and in oral argument appellant states that he does not contend that he was discriminated against but contends that the Grand Jury which returned the indictment was an illegal Grand Jury because it was not selected in accordance with the Constitutional mandate that women serve on Grand Juries in this State. As we understand appellant's contention it is that the grand jury was an illegal grand jury simply because no women were called to serve thereon.

In Winfield v. State, supra, on motion for rehearing, after reviewing our decisions and the Federal Decisions we overruled a similar contention but made it plain that by such holding we did not condone any arbitrary disregard of the Constitutional mandate which imposes upon women as a class the inescapable duty of jury service.

We adhere to this decision and hold that the appellant, a male person, may not complain because no members of the opposite sex were called to serve on the Grand Jury panel.

In overruling appellant's motion to quash the indictment in the present case, the court did not err.

Appellant next insists that the court erred in refusing to charge the jury on circumstantial evidence because there was no direct evidence that he fraudulently converted the mohair to his own use and benefit. With the exception of appellant's intent each essential element of the offense was proven by direct evidence. It is the rule that in such cases where intent alone is determined by circumstances a charge on circumstantial evidence is not required. 22 Texas Jur. 2nd, par. 144, pages 38-40; Burgess v. State, 108 Texas Cr. Rep. 48, 299 S.W. 254 and Stocks v. State, 147 Texas Cr. Rep. 164, 179 S.W. 2d 305.

Appellant further complains of the court's charge on the ground that it did not require the jury to find, before convicting the appellant, that L. Schwartz Company did not consent to appellant's application and conversion of the mohair.

Art. 1544b, supra, requires that the conversion be without the consent of the owner of the property and does not require that it be made without the consent of the corporation. The charge required the jury to find that appellant fraudulently converted the mohair without the consent of Gee, the owner, and was sufficient. Gee's testimony warranted the jury's finding that appellant fraudulently converted the mohair without his consent.

Appellant's remaining contention is that the court erred in admitting the evidence showing the insolvent financial condition of L. Schwartz Company and in refusing to withdraw such evidence from the jury's consideration and instruct them not to consider the same.

The evidence showing such financial condition of the company was admissible on the question of appellant's intent and motive in committing either the offense of theft or embezzlement of the mohair as charged in counts 5 and 8 of the indictment and which were submitted to the jury. Watson v. State, 146 Texas Cr. Rep. 175, 175 S.W. 2d 423, reversed on other grounds.

The judgment is affirmed.

Opinion approved by the Court.