NO. 07-02-0140-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



OCTOBER 10, 2003


______________________________



JESSE E. OLIVA, JR.
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-436,516; HON. JIM BOB DARNELL, PRESIDING


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

MEMORANDUM OPINION


 Jesse E. Oliva, Jr. (appellant) appeals his conviction for aggravated assault. Via two
issues, appellant contends that 1) the trial court erred by failing to grant his motion for
directed verdict and 2) the evidence was legally and factually insufficient to support the jury
verdict. We affirm the judgment.

Standard of Review


 A challenge to the trial court's denial of a motion for instructed verdict is, in effect,
a challenge to the legal sufficiency of the evidence to support the conviction. See Williams
v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); Cook v. State, 858 S.W.2d 467,
470 (Tex. Crim. App. 1993). Thus, we must consider all the evidence presented at trial,
both from the State and the defense, in the light most favorable to the verdict, Cook v.
State, 858 S.W.2d at 470, Bellah v. State, 415 S.W.2d 418, 420 (Tex. Crim. App. 1967),
and determine whether a rational trier of fact could have found that the essential elements
of the offense existed beyond all reasonable doubt. Mathis v. State, 67 S.W.3d 918, 922
(Tex. Crim. App. 2002).

 Next, the standard by which we review the factual sufficiency of the evidence
underlying the verdict is well established and need not be reiterated. Instead, we cite the
parties to Sims v. State, 99 S.W. 3d 600, 601 (Tex. Crim. App. 2003); Zuliani v. State, 97
S.W.3d 589, 593-94 (Tex. Crim. App. 2003); and King v. State, 29 S.W.3d 556, 562-63
(Tex. Crim. App. 2000) for its explanation. 

Application of the Standards 


 Because both issues involve the sufficiency of the evidence, we address them
together. Furthermore, appellant believes that he was entitled to a directed verdict and the
questions the sufficiency of the evidence because the State purportedly failed to prove that
a deadly weapon was used or exhibited during his assault upon another. We disagree and
overrule the issues.

 A person commits the offense of aggravated assault by intentionally or knowingly
threatening another with imminent bodily injury while using or exhibiting a deadly weapon. 
Tex. Pen. Code Ann. §22.01(a)(2) (Vernon 2003). A deadly weapon is "anything that in the
manner of its use or intended use is capable of causing death or serious bodily injury." Id.
at §1.07(17)(B). Here, the deadly weapon that was used or exhibited by appellant when
assaulting his victim was a motor vehicle. Such a mechanism can be a deadly weapon if
its use or exhibition actually endangers life; that is, it must do more than present a mere
potential for endangering others. Cates v. State, 102 S.W.3d 735, 738 (Tex. Crim. App.
2003) citing Mann v. State, 13 S.W.3d 89, 92 (Tex. App.--Austin 2000) adopted "as our
own," Mann v. State, 58 S.W.3d 132 (Tex. Crim. App. 2001). 

 The evidence of record illustrates that Freddie Rodriguez (Rodriguez) was returning
home after washing his wife's car, a 1997 Camaro. With him was his three-year-old son. 
Rodriguez had stopped at a stop light when appellant pulled along side him in a pickup
truck. About the same time another vehicle containing female occupants pulled along the
other side of Rodriguez. Apparently, he was in the middle lane of a three lane street. 
According to Rodriguez, appellant and the occupants of the other vehicle were conversing
over his car and had been racing. Once the light changed, Rodriguez drove away while
the other two vehicles remained stationary. When about 50 to 100 yards in front of
appellant, Rodriguez changed lanes and entered that in which appellant drove. After
Rodriguez did so, appellant sped up towards the Camaro and "screeched" his brakes when
he came within less than five feet of the vehicle. Rodriguez tapped on his brakes to warn
appellant that he was too close. When Rodriguez came to the next street light, appellant
struck the rear of the Camaro. Rodriguez then attempted to turn, and as he did so,
appellant accelerated and again struck the Camaro in effort "to push [Rodriguez] to turn-over." The Camaro went sideways, and upon Rodriguez recovering, appellant drove next
to him cursing, "flipping [him] off," "trying to get [him] to pull over" and attempting to cause
Rodriguez to "pull over against the curb." The force exerted each time appellant struck
Rodriguez' vehicle with his pickup was sufficient enough "to make [Rodriguez'] head go
back." Finally, an officer testified that a motor vehicle can be a deadly weapon depending
on its manner of use.

 Twice striking a motor vehicle with a pickup truck, attempting to "turn over" the
vehicle with the pickup, and physically forcing the vehicle from the road with the pickup is
evidence from which a rational jury could find beyond reasonable doubt that the use
actually endangered the lives of the others. Thus, the finding that appellant used or
exhibited a deadly weapon at the time of the assault enjoys the support of legally sufficient
evidence. Moreover, appellant's contention that the scenario evinced nothing more than
a " routine 'fender-bender'" free of any hostile animus inaccurately describes Rodriguez'
testimony. No one contradicted what the victim said. Nor did any evidence illustrate that
appellant did not twice ram the Camaro, direct obscene gestures towards him, or utter
invectives. Because of this, we cannot say that the verdict was clearly erroneous or
manifestly unjust or that it lacked the support of factually sufficient evidence.

 Accordingly, we affirm the judgment of the trial court.


 Brian Quinn

 Justice


Do not publish.

 



de as
a result of an illegal search and arrest. We affirm. 
Background
          A Lubbock County Grand Jury returned an indictment charging Appellant with
possession of a controlled substance (to-wit: cocaine) with intent to deliver. Appellant
subsequently filed a motion to suppress all physical evidence and all his statements. At
the hearing, DPS Troopers Katrina Jones and Corina Gainey testified that on August 12,
2004, they were traveling east on the U.S. 87 frontage road at County Road 7200 when
they stopped a car because its registration had expired. As Jones approached the driver,
Gainey approached the passenger. Appellant was the passenger. Neither the driver nor
the passenger could produce a driver’s license and both appeared to be nervous. A
license check revealed that the driver had outstanding warrants. It was also determined
that the car belonged to a third party. The troopers arrested the driver, read him his
Miranda rights, and placed him in the front seat of the patrol car. 
          At the troopers’ request, Appellant voluntarily stepped out of the car. Jones asked
Appellant if he had any weapons or narcotics in the car and he answered, “No.” When the
troopers frisked Appellant as a safety precaution, they noticed he had a white powdery
substance on his black pants. As he stood by the roadside, they searched the car incident
to the driver’s arrest. In the car, they discovered scales covered with a white residue in the
glove compartment on the passenger side. They also noticed a similar white powdery
substance on the floorboard on the passenger side while the driver’s side floorboard was
clean. They believed the white substance was cocaine. 
          Gainey asked Appellant to remove his shoes and he refused. She advised
Appellant he was under arrest for possession of drug paraphernalia, handcuffed him, and
placed him in the backseat of the patrol car behind the driver. Appellant was read his
Miranda rights and he indicated that he understood those rights. The troopers then
resumed their search of the car.  
          After completing their search, Jones returned to the patrol car and sat in the back
seat with Appellant. She noticed Appellant was very nervous and had removed a shoe. 
After they arrived at the county jail, Gainey searched the patrol car and found six 
individually-wrapped rocks of cocaine underneath the front passenger seat. The cocaine
rocks were in plastic baggies and appeared to have been kicked underneath the front seat
from the rear seat where Appellant had sat while being transported to the county jail. 
Jones placed Appellant under arrest for possession of a controlled substance. She then
advised Appellant that, if he carried any controlled substance into the jail, the possession
charge would be bumped up to a higher charge because they had entered a controlled
facility with a controlled substance. Appellant responded that he had an additional rock of
cocaine in his sock. The troopers secured the additional narcotics and booked Appellant. 
The rocks located under the front seat and the rock found in Appellant’s sock, which were
similar to the white powdery substance found on the scales in the glove compartment and
floorboard on the passenger side of the vehicle, tested positive for cocaine. 
          At the end of the hearing, without making a definitive ruling on the record, the trial
court expressed doubt as to whether its ruling would be any different from a ruling issued
in another criminal case involving the driver of the vehicle.


 Our review of the remaining
record reveals no additional indication that the trial court ever ruled on Appellant’s motion. 
Furthermore, the record does not reflect the trial court’s ruling in the other criminal case,
nor whether the issues presented in either hearing were similar.   Discussion
          Appellant contends his initial arrest for possession of drug paraphernalia lacked
probable cause because the car’s driver claimed ownership of the scales. Moreover, he
asserts the troopers did not have reasonably trustworthy information warranting a
reasonable person to believe Appellant had committed or was committing a crime when
he was arrested for possession of drug paraphernalia. As a result, Appellant contends all
physical evidence and his statements following the alleged illegal arrest should be
suppressed.
          Initially, Appellant failed to preserve his objections related to his arrest and
subsequent search for appeal because the record does not reflect an adverse ruling by the
trial court on his motion to suppress. Rule 33.1(a) of the Texas Rules of Appellate
Procedure requires, among other things, that the record show the trial court “ruled on the
request, objection, or motion, either expressly or implicitly . . . .” Tex. R. App. P. 
33.1(a)(2)(A). See Gutierrez v. State, 36 S.W.3d 509, 511 (Tex.Crim.App. 2001). Further,
the trial court’s “Certification of Defendant’s Right of Appeal” states “a defendant may
appeal only . . . those matters that were raised by written motions filed and ruled on before
trial . . . .” Emphasis added. 
          Here, the trial court neither explicitly nor implicitly ruled on Appellant’s motion to
suppress. “While the fact that the trial judge ultimately found [appellant] guilty is a factor
to be considered in determining whether the trial court ruled adversely on his motion to
suppress, it is not dispositive.” Montanez v. State, 195 S.W.3d 101, 105 (Tex.Crim.App.
2006) (a defendant can abandon a motion to suppress before entering a guilty plea). 
Moreover, to constitute a ruling, the trial court’s explicit or implicit statements must do more
than just indicate that the trial court is leaning one way or the other. See Sauceda v. State,
129 S.W.3d 116, 124 n.6 (Tex.Crim.App. 2004). Here, we have no more than an indication
that the court is leaning toward issuing a ruling similar to a ruling in another criminal case.


 
Accordingly, nothing before this Court was preserved below for review because the record
does not sufficiently show that Appellant’s motion to suppress was denied.
          That said, however, the trial court’s judgment would be affirmed even if error was
preserved. The initial traffic stop and subsequent frisk of Appellant’s person were proper. 
It is generally accepted that law enforcement officers may lawfully stop and detain a
motorist who commits a traffic violation, Garcia v. State, 827 S.W.2d 937, 944
(Tex.Crim.App. 1992), and, once an officer has validly detained an individual, he or she
may conduct a limited protective search for weapons if he has a reasonable fear for his
safety. Morrison v. State, 132 S.W.3d 37, 45 (Tex.App.–Houston [14th Dist.] 2004, pet.
ref’d) (citing Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The
uncontroverted testimony at the hearing was that the car was stopped for lack of
registration and Appellant was frisked for safety reasons. 
          In addition, the troopers conducted a valid search of the car incident to the driver’s
arrest. See State v. Gray, 158 S.W.3d 465, 469-70 (Tex.Crim.App. 2005); Wiede v. State,
157 S.W.3d 87, 96-7 (Tex.App.–Austin 2005, pet. ref’d). The vehicle search incident to
arrest can include a search of the passenger compartment of the vehicle. New York v.
Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Welch v. State, 93
S.W.3d 50, 59 (Tex.Crim.App. 2002) (Womack, J., concurring). Furthermore, a vehicle
search can include the vehicle’s glove compartment. Satterwhite v. State, 726 S.W.2d 81,
86-7 (Tex.Crim.App. 1986), rev’d on other grounds, 486 U.S. 249, 250-51, 108 S.Ct. 1792,
100 L.Ed.2d 284 (1988). See also Williams v. State, 726 S.W.2d 99, 100 (Tex.Crim.App.
1986); Moreno v. State, 124 S.W.3d 339, 350 (Tex.App.–Corpus Christi 2003, no pet.). 
Thus, pursuant to a valid vehicle search incident to the driver’s arrest, the troopers
observed the white powdery substance on the floorboard on the passenger side of the
vehicle and discovered the scales covered with a white residue in the unlocked glove
compartment.
          Appellant’s demeanor, discovery of the residue-covered scales, the white powdery
substance on the passenger floorboard, and the fact that Appellant’s pants were covered
with a similar substance believed by the troopers to be cocaine supplied probable cause



for the troopers to arrest Appellant for possession of the drug paraphernalia.


 The troopers
were not required to know that the scales were contraband; their reasonable belief that it
was contraband was sufficient. Texas v. Brown, 460 U.S. 730, 742-43, 103 S.Ct. 1535,
75 L.Ed.2d 502 (1983). Just because the driver may have also been implicated in
possession of the scales is not controlling for purposes of determining whether probable
cause existed for Appellant’s arrest. See Gomez v. State, 365 S.W.2d 165, 166
(Tex.Crim.App. 1963) (citing Hargiss v. State, 172 Tex.Crim. 531, 360 S.W.2d 881, 882
(1962)). Accordingly, Appellant’s arrest for possession of drug paraphernalia was
supported by probable cause and was, therefore, legal.
          Finally, Appellant’s subsequent statement at the county jail in response to the
Trooper Jones’s warning that, if any additional contraband was found inside the controlled
facility the penalty would be enhanced, came shortly after Appellant had received his
Miranda warnings and was voluntary. See Jones v. State, 119 S.W.3d 766, 773
(Tex.Crim.App. 2003); Ex parte Bagley, 509 S.W.2d 332, 338 (Tex.Crim.App. 1974). 
When the accused is advised of his rights, indicates he understands his rights, and
thereafter elects to talk with an arresting officer, the accused waives his Fifth Amendment
rights. Id. (citing United States v. Gaytan, 74 F.3d 545, 555 (5th Cir. 1996), cert. denied,
519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996)). Having received his Miranda rights
at the time of his arrest, Appellant waived those rights when he elected to respond to the
trooper’s statement after being transported to the county jail. See Jones v. Fountain, 121
F.Supp. 571, 581 (E.D. Tex. 2000). Accordingly, we overrule both issues.
 

Conclusion
          The trial court’s judgment is affirmed.




                                                                           Patrick A. Pirtle 

                                                                                  Justice 

Do not publish.